**Fill in this information to identify the case:**

Debtor Name  In re HICKAM HARBOR LLC

United States Bankruptcy Court for the: CENTRAL District of CALIFORNIA
(State)

Case number:  2:23-bk-15131-WB

❑ Check if this is an amended filing

Official Form 425A

# Amended Plan of Reorganization for Small Business Under Chapter 11 02/20

**Debtor Hickam Harbor LLC's Amended Plan of Reorganization dated November 29, 2023 (the "Plan")**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

### Background for Cases Filed Under Subchapter V

#### A. Description and History of the Debtor's Business

Hickam Harbor LLC, the chapter 11 debtor in possession and plan proponent (the "Debtor" or "Plan Proponent"), filed its subchapter v chapter 11 bankruptcy case on August 10, 2023. The United States Trustee appointed Susan K. Seflin as the subchapter v trustee on August 16, 2023 [Dkt. No. 8]. This document is the Debtor's *Plan of Reorganization for Small Business Under Chapter 11* (the "Plan"). The Plan provides for the Debtor's emergence from its chapter 11 case, which the Debtor anticipates will occur in the first quarter of 2024. Under the Plan, the Debtor will satisfy certain of its debt and other claims as set forth below. The effective date (the "Effective Date") of the Plan shall be the first business day that is fifteen days after entry of the order confirming the Plan (the "Confirmation Order"), as long as there is no stay of the Confirmation Order.

The Debtor is in the business of developing and operating restaurants in Hawaii and California, and presently operates three separate locations on Joint Base Pearl Harbor-Hickam, which is comprised of two historic military bases. The Debtor has employed up to 100 employees, with locations on both Hickam and Pearl Harbor bases. The Debtor's Pearl Harbor locations consist of a sushi store and a Patxis Pizza Express. These locations are quick service and are staffed with up to 10 people at any given time. The locations are primarily lunch sales, with the Debtor serving up to 200 soldiers a day for lunch. The Debtor is proud to have opened these concepts during the Covid pandemic, including the opportunity to serve military staff, members, and their families with otherwise unique dining options during trying times.

In addition to the Pearl Harbor locations, the Debtor operates an iconic restaurant on Hickam—The Lanai at Mamala Bay (the "Lanai"). The Debtor acquired the Lanai in 2018, and it has consistently remained profitable for the Debtor, even during the pandemic. The Debtor is grateful to have been the only one on base that carried all the military staff during the Covid pandemic, with the Debtor still continuing to this day to serve the base with its now popular "to-go" and "pick up" services. The Debtor's steadfast resolve to serve these communities during trying times—including having management deliver meals to the schools and base offices to keep people fed—has created a unique bond between the Debtor and the communities for which it serves.

Despite the Debtor's successes during the pandemic, the Debtor also assisted one or more related entities by guaranteeing certain of their financial commitments. These related entities have struggled with poor performance—originating from the Covid-19 shutdowns—followed by related and continuing business and supply chain disruptions, as well as inflationary pressures. Unfortunately, a number of these entities have now ceased operations.

The Debtor believes that this Subchapter V case will provide it with an opportunity to successfully reorganize, thereby preserving the jobs of up to 100 employees, and remaining a healthy contributor to the communities in which it serves.

\* The Debtor's sole equity interest holder, Edmund Cutting, also holds 100% of the stock of CCC Consulting Corporation, which is a debtor in its own separate Chapter 11 Subchapter V bankruptcy case pending before this Court (i.e., Case No. 2:22-bk-16853-WB).  Also pending before the Honorable Vincent P. Zurzolo, and this Court, is Edmund Cutting's personal Chapter 11 Subchapter V bankruptcy case (i.e., Case No. 2:23-bk-15051-VZ).

\*\* Terms not otherwise defined herein shall have the meaning ascribed to them in Article 8.01 below.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  As set forth more fully in the liquidation analysis attached hereto as **Exhibit_1_**, creditors will receive more through this Plan than they would be in a liquidation.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Debtor has provided projected financial information as **Exhibit 2**, which includes numerical projections, assumptions, and other relevant and material explanations.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of approximately $456,300.

The final Plan payment is expected to be paid on the date that is five (5) years from the Effective Date, estimated to be in the first quarter of 2024.

<u>The Plan has the following risks</u>:

The estimate of the distributions which will be made to the holders of Allowed Claims represents a projection of future events based upon certain assumptions made by the Debtor. The financial projections attached as Exhibit "2" present, to the best of management's knowledge and belief as well as the Debtor's income and expenses over the five (5) year life of the Plan. Although these future events may or may not occur, and the Debtor's estimate of the distributions which will be made to the holders of Allowed Claims may not be relied upon as a guarantee or other assurance of the actual distributions which will be made to creditors.

Absent confirmation of the Plan, Debtor would not be able to successfully reorganize, which would result in harm to Debtor's creditors, the employment by Debtor's entire workforce, and other adverse consequences.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

| Debtor Name | HICKAM HARBOR LLC | Case number 2:23-bk-15131-WB |
|---|---|---|

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Hickam Harbor LLC (the *Debtor*) from its cash, and future income.

This Plan provides for:

| | |
|---|---|
| 1 | class of priority claims; |
| 5 | classes of secured creditors; |
| 1 | class of non-priority unsecured claims; and |
| 1 | the interests of equity holders in the debtor in property of the estate. |

Non-priority unsecured creditors holding Allowed Claims will receive distributions, which the proponent of this Plan has valued at approximately between five to ten (5-10) cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1**............................... | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2**................................... | The secured claim of the U.S. Small Business Administration. |
| 2.03 | **Class 3**................................. | The claim of First Hawaiian Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 4**................................. | The claim of CHTD Company, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 5**............................... | The claim of Timberland Bank (*aka* ARF Financial), to the extent allowed as a secured claim under § 506 of the Code. |
| 2.06 | **Class 6**............................... | The claim of LA Live Properties, LLC, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.07 | **Class 7**............................... | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.07 | **Class 8**............................... | The interests of equity holders.  Debtor is a Hawaii limited liability company and Edmund Cutting owns 100% membership interest in the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.   Administrative Claims representing post-petition date liabilities incurred by the Debtor in the ordinary course of business, for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such liabilities. |

Debtor Name  HICKAM HARBOR LLC _____    Case number 2:23-bk-15131-WB

| | |
|---|---|
| 3.03  **Priority tax claims** | Each holder of an Allowed Priority Tax Claim against Debtor shall receive, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim, at the election of Debtor, either: (i) Cash payment in the amount of the holder's Allowed Priority Tax Claim on the Effective Date; (ii) in accordance with Code Section 1129(a)(9)(C), regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed Amount of such Priority Tax Claim to be paid over a period ending not later than five (5) years from the Petition Date; or (iii) such other terms as may be agreed upon by such holder and Debtor.  The rate of interest to be paid on Priority Tax Claims that are paid over time as provided above shall be equal to the underpayment rate specified 26 U.S.C. Section 6621 (determined without regard to 26 U.S.C. Section 6621(c)) as of the Effective Date or such higher rate as required by Bankruptcy Code Section 511(a). |
| | Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of post-Petition Date interest on, or penalties with respect to or arising in connection with, such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed by the Court, shall be disallowed by the Plan and the Confirmation Order, and the holders of Priority Tax Claims shall not assess or attempt to collect interest or penalties from the Estate or its properties. |
| 3.04  **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. |
| 3.05  **Prospective quarterly fees** | There are no quarterly fees required to be paid in a subchapter V bankruptcy case. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impaired | Treatment |
|---|---|---|
| Administrative Expenses 11 U.S.C. § 503(b), 507(a)(2) | No | Unpaid portion of Allowed Administrative Claims paid in full in cash on the Effective Date of the Plan or the date there is a Final Order entered allowing such claim, unless such Professional agrees to a different treatment.  The Debtor's counsel estimates fees and costs of approximately $135,000 as of the Effective Date.  The subchapter v trustee estimates fees and costs of approximately $14,000 as of the Effective Date.  Allowed Administrative Claims are currently estimated at approximately $150,000. |
| Priority Tax Claims | Yes | To the extent such claim becomes an Allowed Claim, paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date with interest at underpayment rate specified in 26 U.S.C. § 6621 or 11 U.S.C. § 511.  Allowed Priority Tax Claims on behalf of the State of Hawaii are currently estimated at approximately $139,998.    Allowed Priority Tax Claims on behalf of the Internal Revenue Service are currently estimated at approximately $0 because of a failure to recognize previously filed federal income tax returns. |
| Class 1 - **Priority Claims under § 507(a)** | Yes | To the extent such claim becomes an Allowed Claim, paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date with interest, if applicable, at underpayment rate specified in 26 U.S.C. § 6621 or 11 U.S.C. § 511.  An |

Debtor Name   HICKAM HARBOR LLC                                          Case number 2:23-bk-15131-WB

Allowed Priority Claim on behalf of LA Live Properties, LLC is currently estimated at not more than approximately $21,358.

| | | |
|---|---|---|
| **Class 2 – Secured Claim of U.S. Small Business Administration** | No | The contractual rights of the SBA and the Debtor under that certain Note, Loan Authorization and Agreement, and Security Agreement shall continue to control.   The Allowed Claim of Class 2 is estimated at approximately $1,497,654. |
| **Class 3 – Secured Claim of First Hawaiian Bank** | Yes | The Claim of First Hawaiian Bank, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner: Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5.24%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind.   An anticipated Allowed Claim of Class 3 is estimated at approximately $20,699. |
| **Class 4 – Secured Claim of CHTD Company** | Yes | The Claim of CHTD Company, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner:  Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind.   The Secured Claim of Class 4 is estimated at approximately $0 because, among other reasons, (i) the Class 4 Claim is disputed and the claimant failed to timely file a proof of claim, (ii) the Debtor believes the Class 4 Claim was previously satisfied, and/or (iii) the value of the underlying security available to satisfy senior Secured Claim(s) will account for the entire amount of the Debtor's assets.  Consequently, the Debtor intends to seek to disallow the Class 4 Claim in its entirety, and/or file a section 506(a) motion to strip any lien which comprises the Class 4 Secured Claim. |
| **Class 5 –  Secured Claim of Timberland Bank (aka ARF Financial)** | Yes | The Claim of Timberland Bank (aka ARF Financial), to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner:  Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%.  Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind.   The Secured Claim of Class 5 is estimated at approximately $0 because, among other reasons, (i) the Class 5 Claim is disputed and the claimant failed to timely file a proof of claim, (ii) the Debtor believes the Class 5 Claim was previously satisfied, and/or (iii) the value of the underlying security available to satisfy senior Secured Claim(s) will account for the entire amount of the Debtor's assets.  Consequently, the Debtor intends to seek to disallow the Class 4 Claim in its entirety, and/or file a section 506(a) motion to strip any lien which comprises the Class 5 Secured Claim. |
| **Class 6 –  Secured Claim of LA Live Properties, LLC** | Yes | The Claim of LA Live Properties, LLC, to the extent it becomes an Allowed Secured Claim, shall be satisfied in the following manner: Paid in full the later of (i) the Effective Date, or (ii) in equal monthly installments over a period not to exceed 60 months from the Petition Date.   To the extent it becomes an |

Official Form 425A                    **Plan of Reorganization for Small Business Under Chapter 11**

**Page 5**

| | | |
|---|---|---|
| | | Allowed Secured Claim, such Secured Claim shall accrue interest from the Effective Date on the unpaid balance of the Secured Claim at the rate of 5%. Debtor shall have the right to pay the balance of the Secured Claim in full at any time on or after the Effective Date without premium or penalty of any kind. The Secured Claim of Class 6 is estimated at approximately $0 because, among other reasons, (i) the Debtor disputes the validity, extent, and priority of the Class 6 Claim, (ii) the Debtor believes the Class 6 Claim is avoidable as a preferential transfer because the abstract of judgment was recorded within ninety (90) days of the Petition Date, (iii) the abstract of judgment was recorded in Los Angeles County where the Debtor owns no real property, and (iv) the value of the underlying security available to satisfy senior Secured Claim(s) will account for the entire amount of the Debtor's assets. Consequently, the Debtor intends to seek to disallow the Class 6 Claim in its entirety, avoid such lien as a preferential transfer, and/or move to strip the lien pursuant to section 506(a). |
| Class 7 – **Non-priority General Unsecured Claims** | Yes | Each holder of an Allowed Class 7 Claim will be paid its pro-rata share of the Debtor's net disposable income in bi-annual installments, due on each six (6) month anniversary of the Effective Date of the Plan and ending on the last such date that is no more than five (5) years after the Effective Date.  Debtor shall have the right to pay the balance of any Allowed Claim in full at any time on or after the Effective Date without premium or penalty of any kind.  The anticipated Allowed Class 7 General Unsecured Claims are estimated at not more than approximately $1,583,578. |
| Class 8 – **Interest Holders (Reorganized Debtor)** | No | Unimpaired.  Edmund Cutting is the sole equity interest holder and shall retain his interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a)  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>(1)  Commercial Office - Paramount, CA; and<br><br>(2)  Restaurant Facilities - Joint Base Pearl Harbor and Camp H. M. Smith, which include the following executory contracts detailed, in part, in Proof of Claim No. 11:<br><br>(i)  Contract # N00250-11-C-0071.  Debtor operates The Lanai at Mamala Bay restaurant at Building 3465, Joint Base Pearl Harbor – Hickam; and |

(ii)    Contract # N00250-22-D-0575.    Debtor operates two restaurant establishments - Patxis Pizza and Mermaid Surf & Sushi at Building 1786, Pearl Harbor NEX Food Court; and

(iii)    Contract # KBM23-H-0001. Debtor operates the Sunset at Lanai restaurant at Camp H. M. Smith, Oahu, Hawaii.

(b)    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date, or as otherwise provided for under the Bankruptcy Code.

(c)    The Debtor's assumption of the "Restaurant Facilities – Joint Base Pearl Harbor" executory contract with the United States Navy Exchange Service Command (NEXCOM) shall be paid pursuant to agreement of the Debtor and NEXCOM as follows:

- Debtor shall prepare, file and serve a stipulation and motion to assume the "Restaurant Facilities – Joint Base Pearl Harbor" executory contract.

- The cure amount is $21,551.37.

- One half of the cure amount (i.e., $10,775.69) shall be paid within five (5) business days of entry of the order approving the assumption.

- The remaining one half of the cure amount (i.e., $10,775.68) shall be paid on the Effective Date of the Plan.

(d)    A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

### A.    Implementation of the Plan and Execution of its Terms.

1.    Implementation.

   Debtor proposes to implement and consummate the Plan through the means contemplated sections 1123(a)(5)(A), (B), (D), (E) and (G), 1123(a)(8), 1123(b)(1), (b)(2), (b)(3)(A) and (B), (b)(5) and (b)(6) and/or (d) of the Bankruptcy Code, and pursuant to all otherwise applicable laws, orders and regulations.

2.    Reorganized Debtor and Revesting of Assets.

   On the Effective Date, title to all assets, claims, causes of action, properties, and business operations of Debtor and of the Estate shall revest in Reorganized Debtor, and thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in the Plan.  From and after the Effective Date, except as otherwise described in the Plan, the Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of the Court, except as otherwise provided herein.  From and after the Effective Date, in accordance with the terms of the Plan and the Confirmation Order, Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with the Plan.

3.    Disbursing Agent.

   Whether or not the Plan is a consensual Plan, the Reorganized Debtor shall act as disbursing agent, without bond and without payment, for purposes of making transfers and payments under the Plan.

4.    Funding for the Plan.

   Debtor's interest in Cash and future income are its most significant assets that will be major sources of funding under the Plan.  The Plan will be funded by the Debtor's post-petition "disposable income" over a five (5) year period

Debtor Name    HICKAM HARBOR LLC                                                   Case number 2:23-bk-15131-WB

after the Effective Date. Only creditors holding Allowed Claims will receive distributions and a reserve will be set up for filed or scheduled claims that are disputed and will be subject to a claim objection.  Any claimant whose claim was listed as disputed, contingent, or unliquidated who did not file a claim by the claims bar date shall not receive any distributions under the Plan.

5.    <u>Post-Confirmation Management.</u>

Except as set forth expressly herein to the contrary, upon the Effective Date, Reorganized Debtor will remain in the possession of its property and the management of its affairs.  Except as set forth expressly herein to the contrary, the Reorganized Debtor may continue to operate and manage all assets in the Estate from and after the Effective Date.  Post Effective Date, Edmund Cutting will continue to serve as the sole officer of the Reorganized Debtor with a gross salary of $250,000 per year.

The duties of the Reorganized Debtor shall include preparing and filing the post-confirmation status reports with the United States Trustee until the Case is dismissed or a final decree has been entered, whichever occurs first.

6.    <u>Employment and Compensation of Professionals.</u>

In carrying out its duties under the Plan, Reorganized Debtor may use the services of professionals as it deems appropriate.  Except as set forth herein to the contrary, any professional employed by the Reorganized Debtor in this Case after the confirmation of the Plan seeking payment of its post-confirmation fees and costs will be entitled to seek payment of such fees and costs without the need for any further order of the Bankruptcy Court.

7.    <u>Transfer of Recovery Rights to Reorganized Debtor.</u>

Pursuant Section 1123(b)(3) of the Code, all Recovery Rights of Debtor and the Estate, including but not limited to all Recovery Rights that could be brought under any Sections 362, 510, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and under applicable non-bankruptcy law, shall be retained, owned and enforced by the Reorganized Debtor and may be pursued by the Reorganized Debtor, at its option, after the Effective Date with like manner and effect as if commenced prior to the Confirmation Date.  The proceeds of any recovery with respect to such Recovery Rights shall constitute the property of the Reorganized Debtor.

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |

"***Administrative Claim***" means any right to payment constituting a cost or expense of administration of the Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving Debtor's estate, any actual and necessary costs and expenses of operating Debtor's business, any indebtedness or obligations incurred or assumed by Debtor in connection with the conduct of its business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under Sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against Debtor's Estate under Section 1930of chapter 123 of title 28 of the United States Code and any Claim for goods delivered to Debtor within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to Section 503(b)(9) of the Bankruptcy Code.

"***Allowed***" means, with reference to any Claim, (a) any Claim against Debtor that has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not a Disputed Claim as of the Claims Objection Deadline, or (d) any Claim, the amount or existence of which, if it is a Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court, or (ii) has been allowed by Final Order of the Court; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

"***Allowed Administrative Claim***" means that portion of an Administrative Claim which is an Allowed Claim.

"***Allowed Priority Claim***" means that portion of a Priority Claim which is an Allowed Claim.

"***Allowed Priority Tax Claim***" means that portion of a Priority Tax Claim which is an Allowed Claim.

"***Allowed Secured Claim***" means that portion of a Secured Claim which is an Allowed Claim.

"***Allowed General Unsecured Claim***" means that portion of a General Unsecured Claim which is an Allowed Claim.

"***Ballot***" means each of the ballot forms distributed with the Plan to each holder of an impaired Claim (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

"***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, in effect on the date hereof.

"***Bankruptcy Court***" or "***Court***" means the United States Bankruptcy Court for the Central District of California.

"***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and local rules and general orders of the Court, as the context may require.

"***Business Day***" means any day other than a Saturday, a Sunday or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"***Cash***" means lawful currency of the United States and equivalents thereof, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

"***Claim***" or "***Claims***" has that meaning as defined in Code Sections 101(5)(A) and (B), means (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"***Claim(s) Objection***" or "***Objection to Claim(s)***" whether capitalized below or not, means any motion, contested proceeding or adversary proceeding whereby any party in interest seeks the disallowance of a Claim, or seeks to have the amount, priority, security or validity of a Claim determined for any purpose.

"***Claim(s) Objection Deadline***" means (a) 60 days after the Effective Date, unless extended by an order of the Court, or (b) 30 days after the filing of an Administrative Claim, unless extended by an order of the Court; however, for avoidance of doubt, the Claims Objection Deadline shall be deemed to have been met by the filing of a claim objection, or any other contested or adversary proceeding challenging the amount, priority, validity or secured status of any portion of a claim, at any time prior to the Claims Objection Deadline.

"***Class***" means a group of Claims classified together in a class designated in the Plan.

"***Confirmation Order***" means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

"***Creditor***" means any holder of a Claim, as defined by the Bankruptcy Code, Section 101(10).

"***Debtor***" means Hickam Harbor LLC, whether as debtor or as debtor-in-possession.

"*Disbursing Agent*" means the person charged with making Distributions pursuant to the terms of the Plan.  The Disbursing Agent shall be Debtor.

"*Disputed Claim*" means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed by the Claims Bar Date and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) that is not listed in the Schedules; or (b) any Claim as to any portion of which Debtor or any other party in interest has filed an objection, request for estimation, or other contested or adversary proceeding challenging the amount, priority, validity or secured status on or before the Claims Objection Deadline fixed by the Plan, Code, Rules or the Court, except to the extent that such objection, request for estimation or other adversary or contested proceeding is withdrawn or determined by a Final Order in favor of the holder of such Claim.

"*Distribution*" means the Cash or other value required to be distributed under the Plan to the holders of Allowed Claims.

"*Entity*" means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof.

"*Estate*" means, with respect to Debtor, the estate created by Section 541(a) of the Bankruptcy Code upon the Petition Date.

"*Final Order*" means an order or judgment of the Court the operation or effect of which has not been stayed, and as to which the time to appeal or to seek reargument or rehearing has passed, and as to which no appeal, reargument, or petition for rehearing or certiorari has been taken or is pending; except that with respect to appellate jurisdiction, the term "Final Order" shall have that meaning ascribed to it by applicable law.

"*General Unsecured Claim*" means an unsecured Claim against Debtor, however arising, not entitled to priority under Section 507 of the Bankruptcy Code.

"*Other Priority Claim*" means a Claim, other than an Administrative Claim or a Priority Tax Claim, which, if allowed, would be entitled to priority under Section 507(a) of the Bankruptcy Code.

"*Petition Date*" means August 10, 2023.

"*Plan*" means the Debtor's "Amended Plan of Reorganization for Small Business Under Chapter 11" dated November 29, 2023 (including all exhibits and attachments, each of which is hereby incorporated and made part of the Plan), as modified or amended from time to time in accordance with Section 1127 of the Bankruptcy Code.

"*Plan Term*" means a period of sixty (60) months following the Effective Date.

"*Pro Rata*" means proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

"*Priority Tax Claim*" means a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"*Professionals*" means those Entities (a) employed in the Case under Sections 327 or 1103 of the Bankruptcy Code, and (b) entitled, under Sections 328, 330, 331, 503(b), 506(b), 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting or other professional services and the costs and expenses related to such services from Debtor or the Estate.

"*Recovery Rights*" means any and all manner of causes of action, claims, obligations, suits, debts, judgments and demands whatsoever, whether in law or in equity, including, but not limited to, actions to subordinate Claims under Section 510 of the Bankruptcy Code and

| Debtor Name   HICKAM HARBOR LLC | Case number 2:23-bk-15131-WB |

avoidance power actions set forth in Sections 544 through 550, inclusive, of the Bankruptcy Code.

"*Reorganized Debtor*" means Debtor on and after the Effective Date.

"*Secured Claims*" means Claims secured by a lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Allowed Claim in the interest of the Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.  Secured Claims are included in Classes 2 through 6 herein.

"*Unclaimed Property*" means any funds or other Property to be distributed to Creditors pursuant to the Plan, which, after an attempted distribution, has not been received by the rightful Creditor.  Unclaimed property shall include checks and any other property that have been returned as undeliverable without a proper forwarding address, or which were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

"*United States Trustee*" means the United States Trustee for the Central District of California, Santa Ana Division.

*Voting Deadline*" means the deadline established by the Bankruptcy Court for parties-in-interest entitled to vote to submit their ballots accepting or rejecting the Plan.

| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
|---|---|---|
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | The Debtor shall remain in business.  Edmund Cutting will remain the Chief Executive Officer and Chief Financial Officer of the Reorganized Debtor and his compensation shall remain consistent with his compensation during this case until the payments due under the Plan to Classes 1 to 7 are made.

The sole equity security holder shall retain his interest in the Reorganized Debtor.

On the Effective Date, all actions contemplated by the Plan will be deemed authorized and approved in all respects, and the Reorganized Debtor shall be authorized and directed to implement the provisions of the Plan, and any other agreements, documents, and instruments contemplated by the Plan.

As of the Effective Date, the Reorganized Debtor may operate its business without the need for supervision of, or any authorization from, the Bankruptcy Court or the United States Trustee, |

free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions specifically required by the Plan or Confirmation Order. The Reorganized Debtor shall take such action as is necessary under the laws of the State of California, federal law, and other applicable state law to effect the terms and provisions of the Plan and related documents.

After the Effective Date, the Reorganized Debtor shall be permitted to retain or employ any professional (or maintain employment of any professional Debtor employed prior to the Effective Date) without the need for any notice to creditors and without the need for obtaining any approval or order of the Bankruptcy Court. Any professional employed by Debtor or Reorganized Debtor, as applicable, after confirmation of the Plan will be entitled to obtain payment of all fees and costs incurred after confirmation of the Plan in the ordinary course of business as a post-confirmation operating expense from funds of the estate of Debtor, Debtor, or the Reorganized Debtor, without the need for any notice to creditors or other parties in interest and without the need for obtaining any approval of the Bankruptcy Court.

| [8.08 **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain, after the Effective Date, exclusive jurisdiction of all matters arising out of, arising in or related to, this Case, to the fullest extent permitted by applicable law, including, without limitation, the matters set forth below: |

*Allowance of Claims.*

The Court shall retain exclusive jurisdiction to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim (to the extent permitted under applicable law).

*Executory Contract and Unexpired Lease Proceedings.*

The Court shall retain exclusive jurisdiction to act with respect to proceedings regarding the rejection of any executory contract or unexpired lease of Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code and the Plan, and to determine the allowance and proper classification of any Claims arising from the resolution of any such proceedings.

*Adversary and Contested Proceedings.*

The Court shall retain exclusive jurisdiction to resolve and adjudicate all adversary and contested proceedings, whether pending as of or brought after the Effective Date of the Plan, and to issue orders, judgments and decrees with respect to matters ancillary thereto, including but not limited to enforcement of its own judgments, orders and decrees.

*Plan Interpretation, Implementation, and Modification.*

The Court shall retain jurisdiction to resolve controversies and disputes regarding the interpretation of the Plan and the Confirmation Order. The Court shall retain jurisdiction to implement and enforce the provisions of the Plan and the Confirmation Order, and otherwise to enter orders in aid of confirmation and implementation of the Plan. The Court shall retain jurisdiction to modify the Plan pursuant to Code Section 1127 and the applicable Rules. The Court shall retain jurisdiction to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order. The Court shall retain jurisdiction to correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder of an Allowed Claim are not materially and adversely affected thereby. The Court

shall retain jurisdiction to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

*Final Decree.*

The Court shall retain jurisdiction to enter a final decree closing the Case.

*Failure of the Bankruptcy Court to Exercise Jurisdiction.*

If the Bankruptcy Court declines to exercise jurisdiction over any matter arising under, arising in or related to Debtor, the Case, or the Estate, including with respect to the matters set forth herein, this provision shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## Article 9: Discharge

**Discharge if the Debtor is an individual under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

    (i) imposed by this Plan; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

1. **Local Bankruptcy Rule 3020-1(e).**  If the Debtor's case is converted to one under chapter 7, the property of the Reorganized Debtor, or of any liquidation or litigation trust, or of any other successor to the estate under the Plan, that has not been distributed under the Plan will be vested in the chapter 7 estate, except for property that would have been excluded from the estate if the case had always been one under chapter 7.

2. **Notice of Substantial Consummation.**  Not later than 14 days after the Debtor's Plan has been substantially consummated, the Debtor must file a notice of substantial consummation, and serve this notice on the subchapter v trustee, the United States Trustee and the 20 largest unsecured creditors.

3. **Termination of Subchapter V Trustee's Services.**  The subchapter v trustee's services shall terminate upon entry of the orders approving final fee applications unless the Court orders otherwise.

Debtor Name   HICKAM HARBOR LLC                                        Case number 2:23-bk-15131-WB

Respectfully submitted,

**✗** _____     Edmund Cutting, CEO   _____
[Signature of the Plan Proponent]              [Printed Name]

**✗** _/s/ James E. Till_____     James E. Till   _____
[Signature of the Attorney for the Plan Proponent]    [Printed Name]

Official Form 425A          **Plan of Reorganization for Small Business Under Chapter 11**

# EXHIBIT 1

# Liquidation Analysis

**EXHIBIT 1 - Page 15**

## Exhibit 1 – Liquidation Analysis

Confirmation of the Plan requires that, with respect to each creditor and/or equity interest holder (as applicable) who does not accept the Plan, such creditor and/or equity interest holder will receive at least as much under the Plan as such creditor and/or equity interest holder would receive in a chapter 7 liquidation.  Stated differently, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if Debtor were liquidated under chapter 7 of the Bankruptcy Code.  To determine what holders of Claims would receive if the Debtor was liquidated under chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The Cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of Debtor, augmented by the unencumbered Cash, if any, held by Debtor at the time of the commencement of the liquidation case.  Such Cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority Claims that might result from the use of chapter 7 for the purposes of liquidation.

Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that such a trustee might engage.

To determine if the Plan is in the best interests of each holder of an Allowed Claim, the value of the distributions from the proceeds of a liquidation of Debtor's unencumbered assets and properties, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Creditors, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, and (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under chapter 7, Debtor has determined that confirmation of the Plan will provide each

EXHIBIT 1 - Page 16

holder of an Allowed Claim with a recovery that is not less than such holder would receive pursuant to an immediate liquidation of Debtor's assets under chapter 7.

Debtor's Liquidation Analysis is set forth below.  This analysis provides a summary of the liquidation values of Debtor's assets, assuming a chapter 7 liquidation in which a trustee appointed by the Court would liquidate the assets of Debtor's estate.  Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by Debtor, are inherently subject to uncertainties and contingencies beyond its control.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if Debtor was, in fact, to undergo such a liquidation.

| Asset | Fair Market Value | Liquidation Value |
|---|---|---|
| Cash (est.) | $30,000 | $30,000 |
| Accounts Receivable | $20,000 | $20,000 |
| Inventory | $10,000 | $ 2,000 |
| Misc. furniture, fixtures, etc.[1] | $50,200 | $10,000 |
| Till Law Group[2] | $ 7,370 | $      0 |
| Total | $117,570 | $62,000 |

Administrative Claims (est.):  $  150,000

Priority Tax Claims (est.):  $  128,851[3]

Priority Claims (est.):  $    21,358

Total Secured Claims (est.):  $1,518,353

Total Unsecured Claims:  $1,458,963

Total Claims:  $3,277,525

---

[1] This net liquidation value assumes a "fire sale" amount.

[2] Estimated amount of remaining retainer at the time of a hypothetical chapter 7.

[3] Estimated amount after accounting for failure to recognize previously filed federal income tax returns.

EXHIBIT 1 - Page 17

Below is a demonstration, in tabular format, that all dissenting Creditors will receive at least as much under the Plan as such creditor would receive under a hypothetical chapter 7 liquidation.[4]

| Claims & Classes | Estimated Payout Percentage Under the Plan | Est. Payout Percentage in Chapter 7 Liquidation |
|---|---|---|
| Administrative Claims | 100% | <5% |
| Priority Tax Claims | 100% | <5% |
| Class 1 – Priority Claims | 100% | 0% |
| Class 2 – Secured Claim of U.S. Small Business Administration | 100% | <5% |
| Class 3 – Secured Claim of First Hawaiian Bank | 100% | <5% |
| Class 4 – Secured Claim of CHTD Company | 0% | 0% |
| Class 5 – Secured Claim of Timberland Bank (*aka* ARF Financial) | 0% | 0% |
| Class 6 – Secured Claim of LA Live Properties, LLC | 0% | 0% |
| Class 7 – Non-priority General Unsecured Claims | 5-10% | 0% |
| Class 8 – Interests of Debtor in Property of Estate | n/a | n/a |

---

[4] The percentage figures set forth in this chart assume that the Secured Claims of CHTD Company, Timberland Bank (*aka* ARF Financial), and LA Live Properties, LLC will be each disallowed as a Secured Claim.

EXHIBIT 1 - Page 18

# EXHIBIT 2

# Financial Projections

**EXHIBIT 2 - Page 19**

# Hickam Harbor LLC - The Lanai
## Budget Overview: Budget_FY24_P&L - FY28 P&L
### January - December 2024

|  | Total |
|---|---:|
| **Income** | |
| **4100 Food Sales** | 1,300,000.00 |
| **4300 Beverage Sales** | |
| **4320 Liquor Sales** | 400,000.00 |
| **4330 Beer Sales** | 300,000.00 |
| **4350 Wine Sales** | 50,000.00 |
| **Total 4300 Beverage Sales** | $ 750,000.00 |
| **4500 Merchandise Sales** | 2,000.00 |
| **Total Income** | $ 2,052,000.00 |
| **Cost of Goods Sold** | |
| **5200 Food Cost** | |
| **5210 Dry** | 40,000.00 |
| **5220 Refrigerated** | 550,000.00 |
| **5230 Frozen Cost** | 4,000.00 |
| **5310 N/A Beverage Cost** | 30,000.00 |
| **Total 5200 Food Cost** | $ 624,000.00 |
| **5300 Beverage Cost** | |
| **5320 Liquor Cost** | 65,000.00 |
| **5330 Beer Cost** | 50,000.00 |
| **5340 Wine Cost** | 15,000.00 |
| **Total 5300 Beverage Cost** | $ 130,000.00 |
| **Total Cost of Goods Sold** | $ 754,000.00 |
| **Gross Profit** | $ 1,298,000.00 |
| **Expenses** | |
| **6000 Payroll Expenses** | 200,000.00 |
| **6100 FOH Wages** | |
| **6110 FOH Management** | 78,000.00 |
| **6120 FOH Hourly** | 220,000.00 |
| **Total 6100 FOH Wages** | $ 298,000.00 |
| **6200 BOH Wages** | |
| **6220 BOH Hourly** | 170,000.00 |
| **Total 6200 BOH Wages** | $ 170,000.00 |
| **6700 Employers Payroll Taxes** | 50,000.00 |
| **Total 6000 Payroll Expenses** | $ 718,000.00 |
| **7100 Direct Operating Expenses** | |
| **7120 Restaurant & Kitchen Supply** | 45,000.00 |
| **7140 Decoration & Guest Supply** | 20,000.00 |
| **7150 Linen Services** | 2,500.00 |
| **Total 7100 Direct Operating Expenses** | $ 67,500.00 |
| **7400 Travel** | 10,000.00 |
| **7700 POS Fee** | 9,000.00 |
| **7750 Telephone and Internet** | 12,000.00 |
| **7800 General and Administrative** | |

**EXHIBIT 2 - Page 20**

| | | |
|---|---|---:|
| **7820 Bank Fees** | | |
| 7822 Merchant Account Fees | | 1,000.00 |
| **Total 7820 Bank Fees** | $ | **1,000.00** |
| **7830 Insurance Expense** | | 42,000.00 |
| **7890 Office Expenses** | | |
| 7891 Dues & subscriptions | | 2,000.00 |
| **Total 7890 Office Expenses** | $ | **2,000.00** |
| **Total 7800 General and Administrative** | $ | **45,000.00** |
| **7850 Legal & Professional Services** | | |
| 7854 Legal Fees | | 40,000.00 |
| **Total 7850 Legal & Professional Services** | $ | **40,000.00** |
| **7893 Management Fee** | | 26,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 190,000.00 |
| 8150 Repairs and Maintenance | | 20,000.00 |
| **Total 8100 Facilities** | $ | **210,000.00** |
| SBA Loan(s) | | 84,240.00 |
| **Total Expenses** | $ | **1,221,740.00** |
| **Net Operating Income** | $ | **76,260.00** |
| **Net Income** | $ | **76,260.00** |

Wednesday, Nov 08, 2023 11:49:14 AM GMT-8 - Accrual Basis

The "7893 Management Fee" of $26,000 per year in each of the five years of the Plan, represents a $500 per week kitchen management supervision expense to support the underlying kitchen supervisors.  The management fee is paid to a non-insider third party who provides that additional support.

**EXHIBIT 2 - Page 21**

## Hickam Harbor LLC - The Lanai
## Budget Overview: Budget_FY24_P&L - FY28 P&L
### January - December 2025

| | Total |
|---|---:|
| **Income** | |
| 4100 Food Sales | 1,310,000.00 |
| 4300 Beverage Sales | |
| 4320 Liquor Sales | 400,000.00 |
| 4330 Beer Sales | 300,000.00 |
| 4350 Wine Sales | 50,000.00 |
| Total 4300 Beverage Sales | $ 750,000.00 |
| 4500 Merchandise Sales | 2,000.00 |
| **Total Income** | $ 2,062,000.00 |
| **Cost of Goods Sold** | |
| 5200 Food Cost | |
| 5210 Dry | 40,000.00 |
| 5220 Refrigerated | 550,000.00 |
| 5230 Frozen Cost | 4,000.00 |
| 5310 N/A Beverage Cost | 30,000.00 |
| Total 5200 Food Cost | $ 624,000.00 |
| 5300 Beverage Cost | |
| 5320 Liquor Cost | 65,000.00 |
| 5330 Beer Cost | 50,000.00 |
| 5340 Wine Cost | 15,000.00 |
| Total 5300 Beverage Cost | $ 130,000.00 |
| **Total Cost of Goods Sold** | $ 754,000.00 |
| **Gross Profit** | $ 1,308,000.00 |
| **Expenses** | |
| 6000 Payroll Expenses | 200,000.00 |
| 6100 FOH Wages | |
| 6110 FOH Management | 78,000.00 |
| 6120 FOH Hourly | 220,000.00 |
| Total 6100 FOH Wages | $ 298,000.00 |
| 6200 BOH Wages | |
| 6220 BOH Hourly | 170,000.00 |
| Total 6200 BOH Wages | $ 170,000.00 |
| 6700 Employers Payroll Taxes | 50,000.00 |
| Total 6000 Payroll Expenses | $ 718,000.00 |
| 7100 Direct Operating Expenses | |
| 7120 Restaurant & Kitchen Supply | 45,000.00 |
| 7140 Decoration & Guest Supply | 20,000.00 |
| 7150 Linen Services | 2,500.00 |
| Total 7100 Direct Operating Expenses | $ 67,500.00 |
| 7400 Travel | 10,000.00 |
| 7700 POS Fee | 9,000.00 |
| 7750 Telephone and Internet | 12,000.00 |
| 7800 General and Administrative | |

**EXHIBIT 2 - Page 22**

| | | |
|---|---|---:|
| **7820 Bank Fees** | | |
| 7822 Merchant Account Fees | | 1,000.00 |
| **Total 7820 Bank Fees** | $ | **1,000.00** |
| **7830 Insurance Expense** | | 42,000.00 |
| **7890 Office Expenses** | | |
| 7891 Dues & subscriptions | | 2,000.00 |
| **Total 7890 Office Expenses** | $ | **2,000.00** |
| **Total 7800 General and Administrative** | $ | **45,000.00** |
| **7850 Legal & Professional Services** | | |
| 7854 Legal Fees | | 40,000.00 |
| **Total 7850 Legal & Professional Services** | $ | **40,000.00** |
| **7893 Management Fee** | | 26,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 190,000.00 |
| 8150 Repairs and Maintenance | | 20,000.00 |
| **Total 8100 Facilities** | $ | **210,000.00** |
| SBA Loan(s) | | 84,240.00 |
| **Total Expenses** | $ | **1,221,740.00** |
| **Net Operating Income** | $ | **86,260.00** |
| **Net Income** | $ | **86,260.00** |

Wednesday, Nov 08, 2023 11:49:14 AM GMT-8 - Accrual Basis

The "7893 Management Fee" of $26,000 per year in each of the five years of the Plan, represents a $500 per week kitchen management supervision expense to support the underlying kitchen supervisors. The management fee is paid to a non-insider third party who provides that additional support.

**EXHIBIT 2 - Page 23**

## Hickam Harbor LLC - The Lanai
## Budget Overview: Budget_FY24_P&L - FY28 P&L
### January - December 2026

|  | Total |
|---|---|
| **Income** | |
| **4100 Food Sales** | 1,320,000.00 |
| **4300 Beverage Sales** | |
| **4320 Liquor Sales** | 400,000.00 |
| **4330 Beer Sales** | 300,000.00 |
| **4350 Wine Sales** | 50,000.00 |
| **Total 4300 Beverage Sales** | $ 750,000.00 |
| **4500 Merchandise Sales** | 2,000.00 |
| **Total Income** | $ 2,072,000.00 |
| **Cost of Goods Sold** | |
| **5200 Food Cost** | |
| **5210 Dry** | 40,000.00 |
| **5220 Refrigerated** | 550,000.00 |
| **5230 Frozen Cost** | 4,000.00 |
| **5310 N/A Beverage Cost** | 30,000.00 |
| **Total 5200 Food Cost** | $ 624,000.00 |
| **5300 Beverage Cost** | |
| **5320 Liquor Cost** | 65,000.00 |
| **5330 Beer Cost** | 50,000.00 |
| **5340 Wine Cost** | 15,000.00 |
| **Total 5300 Beverage Cost** | $ 130,000.00 |
| **Total Cost of Goods Sold** | $ 754,000.00 |
| **Gross Profit** | $ 1,318,000.00 |
| **Expenses** | |
| **6000 Payroll Expenses** | 200,000.00 |
| **6100 FOH Wages** | |
| **6110 FOH Management** | 78,000.00 |
| **6120 FOH Hourly** | 220,000.00 |
| **Total 6100 FOH Wages** | $ 298,000.00 |
| **6200 BOH Wages** | |
| **6220 BOH Hourly** | 170,000.00 |
| **Total 6200 BOH Wages** | $ 170,000.00 |
| **6700 Employers Payroll Taxes** | 50,000.00 |
| **Total 6000 Payroll Expenses** | $ 718,000.00 |
| **7100 Direct Operating Expenses** | |
| **7120 Restaurant & Kitchen Supply** | 45,000.00 |
| **7140 Decoration & Guest Supply** | 20,000.00 |
| **7150 Linen Services** | 2,500.00 |
| **Total 7100 Direct Operating Expenses** | $ 67,500.00 |
| **7400 Travel** | 10,000.00 |
| **7700 POS Fee** | 9,000.00 |
| **7750 Telephone and Internet** | 12,000.00 |
| **7800 General and Administrative** | |

**EXHIBIT 2 - Page 24**

| | | |
|---|---|---:|
| **7820 Bank Fees** | | |
| 7822 Merchant Account Fees | | 1,000.00 |
| **Total 7820 Bank Fees** | $ | **1,000.00** |
| **7830 Insurance Expense** | | 42,000.00 |
| **7890 Office Expenses** | | |
| 7891 Dues & subscriptions | | 2,000.00 |
| **Total 7890 Office Expenses** | $ | **2,000.00** |
| **Total 7800 General and Administrative** | $ | **45,000.00** |
| **7850 Legal & Professional Services** | | |
| 7854 Legal Fees | | 40,000.00 |
| **Total 7850 Legal & Professional Services** | $ | **40,000.00** |
| **7893 Management Fee** | | 26,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 190,000.00 |
| 8150 Repairs and Maintenance | | 20,000.00 |
| **Total 8100 Facilities** | $ | **210,000.00** |
| SBA Loan(s) | | 84,240.00 |
| **Total Expenses** | $ | **1,221,740.00** |
| **Net Operating Income** | $ | **96,260.00** |
| **Net Income** | $ | **96,260.00** |

Wednesday, Nov 08, 2023 11:49:14 AM GMT-8 - Accrual Basis

The "7893 Management Fee" of $26,000 per year in each of the five years of the Plan, represents a $500 per week kitchen management supervision expense to support the underlying kitchen supervisors.  The management fee is paid to a non-insider third party who provides that additional support.

**EXHIBIT 2 - Page 25**

## Hickam Harbor LLC - The Lanai
## Budget Overview: Budget_FY24_P&L - FY28 P&L
### January - December 2027

|  | Total |
|---|---:|
| **Income** | |
| 4100 Food Sales | 1,330,000.00 |
| 4300 Beverage Sales | |
| 4320 Liquor Sales | 400,000.00 |
| 4330 Beer Sales | 300,000.00 |
| 4350 Wine Sales | 50,000.00 |
| Total 4300 Beverage Sales | $ 750,000.00 |
| 4500 Merchandise Sales | 2,000.00 |
| **Total Income** | $ 2,082,000.00 |
| **Cost of Goods Sold** | |
| 5200 Food Cost | |
| 5210 Dry | 40,000.00 |
| 5220 Refrigerated | 550,000.00 |
| 5230 Frozen Cost | 4,000.00 |
| 5310 N/A Beverage Cost | 30,000.00 |
| Total 5200 Food Cost | $ 624,000.00 |
| 5300 Beverage Cost | |
| 5320 Liquor Cost | 65,000.00 |
| 5330 Beer Cost | 50,000.00 |
| 5340 Wine Cost | 15,000.00 |
| Total 5300 Beverage Cost | $ 130,000.00 |
| **Total Cost of Goods Sold** | $ 754,000.00 |
| **Gross Profit** | $ 1,328,000.00 |
| **Expenses** | |
| 6000 Payroll Expenses | 200,000.00 |
| 6100 FOH Wages | |
| 6110 FOH Management | 78,000.00 |
| 6120 FOH Hourly | 220,000.00 |
| Total 6100 FOH Wages | $ 298,000.00 |
| 6200 BOH Wages | |
| 6220 BOH Hourly | 170,000.00 |
| Total 6200 BOH Wages | $ 170,000.00 |
| 6700 Employers Payroll Taxes | 50,000.00 |
| Total 6000 Payroll Expenses | $ 718,000.00 |
| 7100 Direct Operating Expenses | |
| 7120 Restaurant & Kitchen Supply | 45,000.00 |
| 7140 Decoration & Guest Supply | 20,000.00 |
| 7150 Linen Services | 2,500.00 |
| Total 7100 Direct Operating Expenses | $ 67,500.00 |
| 7400 Travel | 10,000.00 |
| 7700 POS Fee | 9,000.00 |
| 7750 Telephone and Internet | 12,000.00 |
| 7800 General and Administrative | |

**EXHIBIT 2 - Page 26**

| | | |
|---|---|---:|
| **7820 Bank Fees** | | |
| 7822 Merchant Account Fees | | 1,000.00 |
| **Total 7820 Bank Fees** | $ | **1,000.00** |
| **7830 Insurance Expense** | | 42,000.00 |
| **7890 Office Expenses** | | |
| 7891 Dues & subscriptions | | 2,000.00 |
| **Total 7890 Office Expenses** | $ | **2,000.00** |
| **Total 7800 General and Administrative** | $ | **45,000.00** |
| **7850 Legal & Professional Services** | | |
| 7854 Legal Fees | | 40,000.00 |
| **Total 7850 Legal & Professional Services** | $ | **40,000.00** |
| **7893 Management Fee** | | 26,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 190,000.00 |
| 8150 Repairs and Maintenance | | 20,000.00 |
| **Total 8100 Facilities** | $ | **210,000.00** |
| SBA Loan(s) | | 84,240.00 |
| **Total Expenses** | $ | **1,221,740.00** |
| **Net Operating Income** | $ | **106,260.00** |
| **Net Income** | $ | **106,260.00** |

Wednesday, Nov 08, 2023 11:49:14 AM GMT-8 - Accrual Basis

The "7893 Management Fee" of $26,000 per year in each of the five years of the Plan, represents a $500 per week kitchen management supervision expense to support the underlying kitchen supervisors. The management fee is paid to a non-insider third party who provides that additional support.

EXHIBIT 2 - Page 27

## Hickam Harbor LLC - The Lanai
## Budget Overview: Budget_FY24_P&L - FY28 P&L
### January - December 2028

|  | Total |
|---|---|
| **Income** | |
| **4100 Food Sales** | 1,335,000.00 |
| **4300 Beverage Sales** | |
| **4320 Liquor Sales** | 400,000.00 |
| **4330 Beer Sales** | 300,000.00 |
| **4350 Wine Sales** | 50,000.00 |
| **Total 4300 Beverage Sales** | $ 750,000.00 |
| **4500 Merchandise Sales** | 2,000.00 |
| **Total Income** | $ 2,087,000.00 |
| **Cost of Goods Sold** | |
| **5200 Food Cost** | |
| **5210 Dry** | 40,000.00 |
| **5220 Refrigerated** | 550,000.00 |
| **5230 Frozen Cost** | 4,000.00 |
| **5310 N/A Beverage Cost** | 30,000.00 |
| **Total 5200 Food Cost** | $ 624,000.00 |
| **5300 Beverage Cost** | |
| **5320 Liquor Cost** | 65,000.00 |
| **5330 Beer Cost** | 50,000.00 |
| **5340 Wine Cost** | 15,000.00 |
| **Total 5300 Beverage Cost** | $ 130,000.00 |
| **Total Cost of Goods Sold** | $ 754,000.00 |
| **Gross Profit** | $ 1,333,000.00 |
| **Expenses** | |
| **6000 Payroll Expenses** | 200,000.00 |
| **6100 FOH Wages** | |
| **6110 FOH Management** | 78,000.00 |
| **6120 FOH Hourly** | 220,000.00 |
| **Total 6100 FOH Wages** | $ 298,000.00 |
| **6200 BOH Wages** | |
| **6220 BOH Hourly** | 170,000.00 |
| **Total 6200 BOH Wages** | $ 170,000.00 |
| **6700 Employers Payroll Taxes** | 50,000.00 |
| **Total 6000 Payroll Expenses** | $ 718,000.00 |
| **7100 Direct Operating Expenses** | |
| **7120 Restaurant & Kitchen Supply** | 45,000.00 |
| **7140 Decoration & Guest Supply** | 20,000.00 |
| **7150 Linen Services** | 2,500.00 |
| **Total 7100 Direct Operating Expenses** | $ 67,500.00 |
| **7400 Travel** | 10,000.00 |
| **7700 POS Fee** | 9,000.00 |
| **7750 Telephone and Internet** | 12,000.00 |
| **7800 General and Administrative** | |

**EXHIBIT 2 - Page 28**

| | | |
|---|---|---|
| **7820 Bank Fees** | | |
| 7822 Merchant Account Fees | | 1,000.00 |
| **Total 7820 Bank Fees** | **$** | **1,000.00** |
| **7830 Insurance Expense** | | 42,000.00 |
| **7890 Office Expenses** | | |
| 7891 Dues & subscriptions | | 2,000.00 |
| **Total 7890 Office Expenses** | **$** | **2,000.00** |
| **Total 7800 General and Administrative** | **$** | **45,000.00** |
| **7850 Legal & Professional Services** | | |
| 7854 Legal Fees | | 40,000.00 |
| **Total 7850 Legal & Professional Services** | **$** | **40,000.00** |
| **7893 Management Fee** | | 26,000.00 |
| **8100 Facilities** | | |
| 8110 Rent & Lease | | 190,000.00 |
| 8150 Repairs and Maintenance | | 20,000.00 |
| **Total 8100 Facilities** | **$** | **210,000.00** |
| SBA Loan(s) | | 84,240.00 |
| **Total Expenses** | **$** | **1,221,740.00** |
| **Net Operating Income** | **$** | **111,260.00** |
| **Net Income** | **$** | **111,260.00** |

Wednesday, Nov 08, 2023 11:49:14 AM GMT-8 - Accrual Basis

The "7893 Management Fee" of $26,000 per year in each of the five years of the Plan, represents a $500 per week kitchen management supervision expense to support the underlying kitchen supervisors.  The management fee is paid to a non-insider third party who provides that additional support.

**EXHIBIT 2 - Page 29**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
120 Newport Center Drive, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **Amended Plan of Reorganization for Small Business Under Chapter 11 Dated November 29, 2023,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 29, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF Service List

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the procedures of the Honorable Julia W. Brand, Judge Brand waives application of LBR 5005-2(d) to serve Judge's copies for all documents unless otherwise directed by the Court.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 29, 2023 | Martha Araki | /s/ Martha Araki |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**In re HICKAM HARBOR LLC**                                    **Case No. 2:23-bk-15131-WB**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Attorneys for Debtor Hickam Harbor LLC:  **James E. Till**:  james.till@till-lawgroup.com; martha.araki@till-lawgroup.com; myrtle.john@till-lawgroup.com; sachie.fritz@till-lawgroup.com
- Subchapter V Trustee:  **Susan K Seflin (TR)**:  sseflin@bg.law; sks@bg.law; mailto:aquijano@bg.law; C192@ecfcbis.com; ecf@bg.law
- Attorneys for Creditors 671 Laurel San Carlos Associates, LLC and 677 Laurel Street Associates, LLC:  **William W. Huckins**:  whuckins@allenmatkins.com; clynch@allenmatkins.com; igold@allenmatkins.com
- Courtesy Notice/Interested Party: **Matthew D Pham**:  mpham@allenmatkins.com; mdiaz@allenmatkins.com
- Attorneys for Creditor LA Live Properties LLC:  **David P. Simonds**: david.simonds@hoganlovells.com; tracy.southwell@hoganlovells.com
- **United States Trustee (LA)**:  ustpregion16.la.ecf@usdoj.gov; **Dare Law**:  dare.law@usdoj.gov; nancy.goldenberg@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**